IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

|  |  |
|---|---|
| KATE CALVIN, JOHN NELSON, CHARLES J. PARRISH, LONNIE GRIFFIN and CONCERNED UNITED PEOPLE, <br><br> Plaintiffs, <br><br> vs. <br><br> JEFFERSON COUNTY BOARD OF COMMISSIONERS, JEFFERSON COUNTY SCHOOL BOARD, and MARTY BISHOP, SUPERVISOR OF ELECTIONS, in his official capacity, <br><br> Defendants. | Case No.: |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## NATURE OF THE CASE

1. Plaintiffs challenge the redistricting plan the Jefferson County Board of Commissioners and the Jefferson County School Board adopted in 2013 (hereinafter referred to as the "2013 Redistricting Plan" or "the Plan"), as a violation of their Fourteenth Amendment right to equal representation under the "one person, one vote" principle of the Equal Protection Clause. Plaintiffs assert that the 2013 Redistricting Plan is a form a prison-based gerrymandering. Defendants' decision to include the inmate population at Jefferson Correctional Institution ("JCI") unlawfully inflates the political strength of actual residents in the district that houses the prison (District 3) and dilutes the voting strength of those living in all of the other districts in the county (Districts 1, 2, 4 and 5).

2. "Prison-based gerrymandering" is a practice whereby local governments like Jefferson County include inmates as residents of the district where the prison is located when drawing election lines. The Jefferson County Board of Commissioners ("Board of Commissioners") and the Jefferson County School Board ("School Board"), adopted the same redistricting plan in 2013 for their respective five single-member districts. The Plan treats the approximately 1,157 inmates at JCI as if they were "residents" of District 3 even though the overwhelming majority of these individuals remain residents of their pre-incarceration community for virtually all legal purposes, including voting.

3. The incarcerated population at JCI constitutes a full 37.73% of the people who make up District 3, and 43.2% of the voting age population in the district. As a result, every four actual residents of District 3 have as much political influence in county and school affairs as seven residents in any other district. Consequently, the voting strength of persons residing in District 3 is artificially inflated and the voting strength of persons residing in all of the other districts is weakened, in violation of the "one person, one vote" principle established by the Fourteenth Amendment.

4. The 2013 Redistricting Plan has a discriminatory effect on Jefferson County residents outside of District 3. Plaintiffs seek to enjoin the use of the Plan for any and all future elections, and to replace it with a plan that protects their right to equal protection under the law pursuant to Section 1 of the Fourteenth Amendment to the United States Constitution.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1343(a)(3) and (4), and 28 U.S.C .§§ 2201 and 2202.  This suit is authorized by 42 U.S.C. § 1983.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

**THE PARTIES**

7.      Plaintiff KATE CALVIN is a resident of Monticello, Florida located in Jefferson County, and she lives in District 2.  Ms. Calvin is over the age of 18 and is a registered voter in Jefferson County.  She regularly votes in Jefferson County and city elections.

8.      Plaintiff JOHN NELSON is a resident of Monticello, Florida located in Jefferson County, and he lives in District 2.  Mr. Nelson is over the age of 18 and is a registered voter in Jefferson County.  He regularly votes in Jefferson County and city elections.  From 2010-2014, Mr. Nelson served as a member of the Jefferson County Board of Commissioners for District 2.

9.      Plaintiff CHARLES J. PARRISH is a resident of Monticello, Florida located in Jefferson County, and he lives in District 4.  He is over the age of 18 and is a registered voter in Jefferson County.  He regularly votes in Jefferson County and city elections.

10.     Plaintiff LONNIE GRIFFIN is a resident of Monticello, Florida located in Jefferson County, and lives in District 1.  He is over the age of 18 and is a registered voter in Jefferson County.  He regularly votes in Jefferson County and city elections.

11. Plaintiff CONCERNED UNITED PEOPLE (CUP) is a not-for-profit organization based in Jefferson County, Florida. It has a membership of over 125 people who are all residents of Jefferson County, and they have members located in each of the five districts represented on the County Commission and on the School Board. CUP's mission is to serve the needs of Jefferson County residents, particularly the African-American community. CUP achieves its goal by monitoring the activities of local government agencies through attendance at and participation in county commission, school board, and city council meetings. The organization also educates the public on issues such as voting rights, teen pregnancy, economic development, and criminal justice reform. CUP conducts voter education programs, including voter registration drives and Get Out the Vote activities.

12. Defendant JEFFERSON COUNTY BOARD OF COMMISSIONERS governs Jefferson County. Fla. Stat. §§ 125.01, 124.01. Jefferson County is a geographical and political subdivision of the State of Florida located within the Northern District of Florida. The Board of Commissioners has the authority to fix district boundaries "so as to keep them as nearly equal in proportion to population as possible." Fla. Stat. § 124.01(3). The Board of Commissioners is charged with ensuring Jefferson County's compliance with applicable state and federal laws.

13. Defendant JEFFERSON COUNTY SCHOOL BOARD is the agency head for the Jefferson County School System and is responsible for the governance and administration of the Jefferson County School System. The School Board has the authority to fix election district boundaries and is charged with ensuring the School Board's compliance with applicable state and federal laws. Fla. Stat. § 1001.32.

14. Defendant MARTY BISHOP is the Supervisor of Elections for Jefferson County. He has statutory powers, duties and responsibilities concerning the conduct of elections held in Jefferson County. He oversees and is responsible for the administration of elections in the county, including elections for both the County Commission and School Board. Fla. Stat. § 98.015. He is sued in his official capacity.

## FACTUAL ALLEGATIONS

15. The Jefferson County Board of Commissioners has five members who serve four-year, staggered terms, with an election occurring every two years. The members represent single-member districts and are elected by voters from the individual district in which the commission candidate lives.

16. The Jefferson County School Board has five members, each of whom represent single-member districts and are elected by voters from the individual district in which the School Board candidate lives. School Board members are elected to serve four-year, staggered terms during the general election held in November of even numbered years.

17. Jefferson Correctional Institution (JCI) is located in Jefferson County, in District 3. According to the 2010 Census data, the total inmate population of JCI was 1,157.

18. Upon information and belief, the majority of the persons incarcerated at JCI are not residents of Jefferson County, much less District 3. Instead, for purposes of voting, they remain residents of the county where they lived and were registered to vote prior to their incarceration. Fla. Stat. § 101.045(1).

5

19. Upon information and belief, all of the inmates or a significant majority of the inmates at JCI are ineligible to vote in county elections because they are incarcerated for a felony conviction.  Fla. Const. art. VI, § 4(a); Fla. Stat. § 97.041(2)(b).

20. Upon information and belief, the children of persons incarcerated at JCI are not allowed to attend public schools in Jefferson County by claiming residence of the parent at JCI.

21. Upon information and belief, incarcerated persons at JCI cannot voluntarily visit or patronize public or private establishments in Jefferson County such as restaurants, hotels, grocery stores, gas stations, schools, movie theaters, museums, musical performances, shops, parks, playgrounds, athletic fields, theatres, churches, businesses, recreational centers, or public transportation.

22. Upon information and belief, persons incarcerated at JCI do not have a choice as to where they will serve their prison sentences.

23. Felony sentences in Florida can range from one year to life imprisonment, or even death.  Fla. Stat. § 775.08(1).

**Jefferson County Demographics**

24. According to the 2010 Census data, the total population of Jefferson County including the prison was 14,761.  The total population deviation of the Plan is approximately 8.67%.  Under the Plan, the Black voting age population is 47.62%, and the Hispanic voting age population is 7.35%.

25. According to the 2010 Census data, the total population of Jefferson County excluding the prison was 13,604.

26. The total population deviation when the prison is excluded is 42.63%, far outside the constitutional limits on population deviation under the one person, one vote requirement of the Fourteenth Amendment.

27. When the prison is excluded from the total population count, the Black voting age population decreases to 32.73%, and the Hispanic voting age population decreases to 2.80%.

**Jefferson County Redistricting**

28. Upon information and belief, following the 2010 Census, the County Commission hired a consultant who prepared two proposed redistricting plans – Plan A and Plan B. Both proposed plans included the prison inmates at JCI in the total population count.

29. In or around November 2013, the School Board held a public hearing during which it considered Plan A and Plan B for its own redistricting purposes. The School Board hired an independent consultant to review Plan A and Plan B and to draft alternative plans.

30. Some of the alternative plans the independent consultant for the School Board prepared showed that it was possible to satisfy traditional redistricting principles, including the one person, one vote standard, without including the inmates at JCI in the total population count.

31. On or about December 3, 2013, the County Commission held a public hearing regarding the adoption of a new redistricting plan.

32. Plaintiff Kate Calvin attended the December 3, 2013 public hearing and testified in opposition to Plan A and Plan B. As part of her testimony, she presented

7

slides which pointed out the severe population discrepancies that including the incarcerated population at JCI in District 3 would cause.  Plaintiff Calvin also argued that Plan A unfairly diluted minority voting strength and created an unfair voting advantage for white voters.

33.     Plaintiff John Nelson served on the County Commission, representing District 2, during the December 3, 2013 public hearing.  He opposed both Plan A and Plan B and argued the plans unnecessarily diluted minority voting strength.  He also urged his fellow commissioners to vote against both plans.

34.     On or about December 3, 2013, following the public hearing on redistricting, the County Commission voted 3-2 to approve Plan A (the "2013 Redistricting Plan"), even though the plan relies on the inmates at JCI to make up 37.73% of the total population in District 3, and 43.2% of the voting age population in the district.

35.     Plaintiff Nelson voted against Plan A.

36.     In or around December 2013, the School Board adopted Plan A as its redistricting plan.

37.     As a result of the 2013 Redistricting Plan, the voting strength of individual residents living in District 3 is inflated and the voting strength of Plaintiffs and the residents living in Districts 1, 2, 4, and 5 is diluted.

38.     Plaintiffs are suffering irreparable harm as a result of Defendants' actions complained of herein, and that harm will continue unless Defendants' current practice of counting prison populations for the purpose of apportionment is declared unlawful and enjoined.

39. Plaintiffs have no adequate remedy at law other than this action for declaratory and injunctive relief.

## CAUSE OF ACTION
### (Violation of Equal Protection)

40. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

41. Section 1 of the Fourteenth Amendment to the United States Constitution provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

42. The "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment mandates that each person's vote shall be equal to that of his or her fellow citizens.

43. The reliance on the incarcerated population at JCI to help make up District 3 in Jefferson County for purposes of drawing district lines inflates the voting strength and political influence of the residents in District 3 and dilutes the voting strength and political influence of Plaintiffs and other persons residing outside of District 3, in violation of the Equal Protection requirement of Section 1 of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully ask this Court to:

(1) Exercise jurisdiction over Plaintiffs' claim brought under the United States Constitution;

(2) Declare that the 2013 Redistricting Plan adopted by the Jefferson County Commission and Jefferson County School Board violates Plaintiffs' right to equal

protection under Section 1 of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983;

(3) Enjoin Defendants and their agents, employees, and representatives from conducting elections for the Jefferson County Board of Commissioners and the Jefferson County School Board under the 2013 Redistricting Plan;

(4) In the event Defendants fail or are unable to implement a redistricting plan that comports with the Constitution of the United States, enforce a court ordered redistricting plan;

(5) Award Plaintiffs the expenses, costs, fees, and other disbursements associated with the filing and maintenance of this action, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and reasonable expert fees pursuant to 52 U.S.C. § 10310(e);

(6) Exercise continuing jurisdiction over this action during the enforcement of its judgment; and

(7) Award any other and further relief this Court deems proper and just.

DATED this 9th day of March, 2015.

        Respectfully submitted,

        s/Nancy G. Abudu
        Nancy Abudu (Fla. Bar No. 111881)
        nabudu@aclufl.org
        Shalini Goel Agarwal (Fla. Bar No. 90843)
        sagarwal@aclufl.org
        ACLU Foundation of Florida, Inc.
        4500 Biscayne Blvd., Suite 340
        Miami, FL 33137
        Tel: 786-363-2700
        Fax: 786-363-1448

Randall C. Berg, Jr. (Fla. Bar No. 318371)
rberg@FloridaJusticeInstitute.org
Dante P. Trevisani (Fla. Bar No. 72912)
dtrevisani@FloridaJusticeInstitute.org
Florida Justice Institute, Inc.
100 SE Second St., Ste. 3750
Miami, FL 33131-2115
Tel: 305.358.2081
Fax: 305.358.0910