UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KATE CALVIN, JOHN NELSON,
CHARLES J. PARRISH, LONNIE GRIFFIN
and CONCERNED UNITED PEOPLE,

    Plaintiffs,

vs.                                          CASE NO.:  4:15-CV-00131-MW-CAS

JEFFERSON COUNTY BOARD OF
COMMISSIONERS, JEFFERSON COUNTY
SCHOOL BOARD and MARTY BISHOP,
SUPERVISOR OF ELECTIONS, in his official
capacity,

    Defendants.
_____/

**DEFENDANTS', JEFFERSON COUNTY BOARD OF COUNTY COMMISSIONERS, MARTY BISHOP, SUPERVISOR OF ELECTIONS, IN HIS OFFICIAL CAPACITY, AND JEFFERSON COUNTY SCHOOL BOARD,
<u>JOINT MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Rule 56, Federal Rules of Civil Procedure, and N.D. Fla. Loc. R. 7.1(A), Defendants JEFFERSON COUNTY BOARD OF COUNTY COMMISSIONERS, MARTY BISHOP, in his official capacity as Supervisor of Elections for Jefferson County Florida, and JEFFERSON COUNTY SCHOOL BOARD, file the following memorandum of law in support of their Motion for Summary Judgment:

1. On March 9, 2015, Plaintiffs filed a complaint alleging that the Jefferson County Board of Commissioners ("County") and the Jefferson County School Board ("School Board") violated the Fourteenth Amendment Equal Protection Clause guarantee of "one person one vote" when they adopted a redistricting plan which contained less than 10% maximum population deviation.

2. The sole basis of Plaintiffs' claim centers around the Defendants' decision to include the inmate population housed in the Jefferson Correctional Institution ("JCI") in the total population count of Jefferson County.

3. In accordance with the 2010 United States Census Bureau's decennial census, which includes the inmate population of JCI in the raw population numbers of the County, on December 3, 2013, the County and School Board approved a redistricting plan [Plan A] which included the entirety of the JCI population within District 3. [Complaint, ¶34].

4. Plan A has a maximum population deviation of 8.67%; well within the 10% parameter established by the United States Supreme Court to test the validity of a redistricting plan under the Equal Protection Clause.

5. The Defendants acknowledge that when the prison population of JCI is artificially excluded from the population numbers the population deviation is in excess of the 10 percent safe harbor established parameters.  However, no federal, state, or local, law, rule, constitutional provision or requirement dictates that the County or School Board must exclude the prison population of JCI from its redistricting numbers.

6. As Plaintiffs are unable to come forth with any authoritative law requiring the exclusion of the JCI inmate population from the County's and School Board's redistricting plan, and the plan is within the required maximum population deviation established by the Supreme Court, Defendants are entitled to summary judgment on Plaintiffs' Equal Protection claim.

WHEREFORE, Defendants Jefferson County Board of County Commissioners, Marty Bishop, in his official capacity, and Jefferson County School Board respectfully request that this Court grant their motion for summary judgment in accordance with the rules of procedure and the applicable statutes and case law.

**STATEMENT OF FACTS**

1. Jefferson County is a geographical and political subdivision of the State of Florida located within the Northern District of Florida.

2. The elected Jefferson County Board of County Commissioners governs Jefferson County. The County has the authority to fix district boundaries "so as to keep them as nearly equal in proportion to population as possible." Fla. Stat. § 124.01(3). The Board of County Commissioners is charged with ensuring Jefferson County's compliance with applicable state and federal laws.

3. Marty Bishop is the elected Supervisor of Elections for Jefferson County and administers all federal, state, county, municipal and special district elections in Jefferson County in accordance with Federal and Florida law.

4. The School Board is the agency head for the Jefferson County School System and is responsible for the governance and administration of the Jefferson County School System. The School Board has authority to fix election district boundaries. Fla. Stat. §1001.32.

5. The County has five members who serve four-year, staggered terms, with an election occurring every two years. The members represent single-member districts and are elected by voters from the individual district in which the commission candidate lives. Similarly, the School Board has five members who serve four-year, staggered terms, with an election occurring every two years. The members represent single-member districts and are elected by voters from the individual district in which the member lives.

6. The United States Census Bureau conducts a census every ten years to determine the population and population distribution of the nations population. Pursuant to Article VIII, Section 1(e), Florida Constitution, all counties are required to redistrict following the conclusion of each decennial census.

7. JCI is located in Jefferson County, in District 3. According to the 2010 Census data, the total inmate population of JCI was 1,157. The Census Bureau includes all prisoners within the population in the area where the prisoners are housed at the time of the census.

8. According to the 2010 Census data, the total population of Jefferson County is 14,761.

9. After determining that the population distribution, as set forth in the 2010 census, required reapportionment, the County undertook to fulfill its Constitutional requirements to reapportion in June of 2013. [Bishop Affidavit, ¶6].

10. As the County lacked the necessary expertise and technology necessary to develop redistricting maps and plans, the County contracted with Bryant, Miller, and Olive, P.A., in association with Kurt Spitzer and Associates, P.A. in order to develop a redistricting plan that was in accordance with the requirements of Section 2, of the Voting Rights Act, as well as the United States Constitution. [Bishop Affidavit, ¶7]. The School Board also hired experts to develop a redistricting plan.

11. Early in the redistricting process the County and School Board specifically addressed how the prison population would be counted for purposes of redistricting. [Bishop Affidavit, ¶8] In accordance with Florida law, and Attorney General Opinion 2001-56, the only analysis that addresses the Florida law, the law firm hired to assist the County in the redistricting process instructed the County that Florida law required the County to count the prison population within the district in which the prison was located, consistent with Jefferson County's previous practice. [Bishop Affidavit, ¶8]

12. The consultants and attorneys presented the County with two separate plans that met all constitutional requirements. In order to minimize the potential changes to voters, and to

maintain the core of prior districts, both plans, Plan A and B, made only minor changes to the existing apportionment maps. [Bishop Affidavit, ¶9].

13. Both maps included the entire population of JCI within District 3, as required by Florida law. [Bishop Affidavit, ¶9]. The population of JCI was counted within the population of District 3 in the prior apportionment plan as well.

14. In December 2013, the County voted to approve Plan A (the "2013 Redistricting Plan"). [Bishop Affidavit, ¶10] Similarly, the School Board voted 3-2 to approve the same Plan A that the County adopted.

15. The total population deviation of the 2013 Redistricting Plan is approximately 8.67%.

## MEMORANDUM OF LAW

As support for their Motion for Summary Judgment, the Defendants submit the following memorandum of law as required by Local Rule 7.1(A).

### I. Standard of Review

As this Court recently summarized:

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11 Cir. 1988). As the Supreme Court held in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth,* 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Castleberry v. Goldome Credit Corp.,* 408 F.3d 773, 785–86 (11th Cir. 2005).

*Payne v. McKeithen*, No.: 5:13cv91-MW/GRJ, 2015 WL 1650896 (N.D. Fla. April 13, 2015).

## II. The County's and School Board's Plan meets constitutional requirements.

As an initial note, Plaintiffs' characterization of the County's and School Board's decisions regarding redistricting actions as prison "gerrymandering" is misleading, at best. Gerrymander means:

> the process of dividing a state or other territory into the authorized civil or political divisions, but with such a geographical arrangements to accomplish a sinister or unlawful purpose, as, for instance, to secure a majority for a given political party in districts where the result would be otherwise if they were divided according to obvious natural lines, or to arrange school districts so that children of certain religions or nationalities shall be brought within one district and those of a different Religion or nationality in another district.

*State v. Whitford*, 54 Wis. 150, (1882).

While Plaintiffs assert an Equal Protection Claim and include demographic census information for African Americans and Hispanics, they do not allege that the adopted plan is the result of a discriminatory animus or dilutes the voting strength of any protected class. Plaintiffs likewise do not allege that the County or School Board discriminated against them in any manner or attempted to gain an unfair advantage for one political party or classification of voters. Instead, Plaintiffs' entire case rests on a legal theory which would require this Court to deviate from established constitutional precedent and determine for the first time that a political body cannot rely on total population numbers established by the United States Census Bureau when redrawing its redistricting lines. In asking the Court to mandate a legal remedy for a non-existent wrong, the Plaintiffs are advocating for a principal that is heretofore unrecognized or established by any federal court that "one person, one vote" constitutionally *mandates* the

removal of inmates from total population numbers for purposes of reapportionment. Because the Defendants cannot violate a non-existent right, the Defendants are entitled to summary judgment.

### A. One Person, One Vote

Although no decisional law exists that has determined whether a political body can be required to exclude prisoners from their population numbers when redrawing redistricting lines, analogous cases, analyzing the treatment of other sections of society's nonvoting population, have all determined that use of total population is a constitutionally permissible way of redrawing district lines. *See Chen v. City of Houston*, 206 F.3d 502, 525 (5th Cir. 2000); *Garza v. County of Los Angeles,* 918 F.2d 763, 775-76 (9th Cir. 1990); *Daly v. Hunt*, 93 F.3d 1212, 1227 (4th Cir. 1996). In *Chen,* the court summarized the requirements of "one person, one vote" as follows:

> The Equal Protection Clause requires that representatives to an elected body be drawn from voting districts of substantially equal population. *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). This guarantee extends to local elections. *See Avery v. Midland County,* 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968). However, because state and local elections are not subject to the explicit commands of the Constitution regarding federal elections, they are not held to a standard of absolute population equity. *See Brown v. Thomson,* 462 U.S. 835, 103 S.Ct. 2690, 2695-96, 77 L.Ed.2d 214 (1983) (state must make only a good faith effort to ensure population equity and may balance population against other legitimate concerns). If the maximum variation between districts exceeds a certain threshold, the state will be required to justify the variance by invoking such concerns. *Mahan v. Howell,* 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973) (16.4% variation justified by constraints of political subdivision lines). **However, below a certain threshold the plaintiff has failed to establish a *prima facie* case and the districting body will not be required to justify minor variations.** *See Gaffney v. Cummings,* 412 U.S. 735, 93 S.Ct. 2321, 2330, 37 L.Ed.2d 298 (1973). The Court has indicated that this threshold is **ten percent**. *See, e.g., Connor v. Finch,* 431 U.S. 407, 97 S.Ct. 1828, 1833, 52 L.Ed.2d 465 (1977) (setting threshold at ten percent).

*Chen,* 206 F.3d at 525 (emphasis added).

Here, Plaintiffs' claim fails to make out a prima facie violation of the "one person, one vote" standard for two reasons: 1) apportioning representative districts based on total population

is an acceptable methodology under the Equal Protection Clause and using such methodology the County's and School Board's plan is within the acceptable limits of deviation among the five districts; and 2) there is no constitutional, or any other, requirement that a political subdivision remove a segment of its total population base due to that segment's inability to vote.

      **B.**    The County's and School Board's Plan is within the 10% safe harbor deviation and therefore presumed to satisfy the requirements of the Equal Protection Clause.

Plaintiffs admit that when using total population as the basis for the County's and School Board's redistricting lines, the County's and School Board's plan is within the safe harbor deviation permitted by the Supreme Court. Therefore, unless Plaintiffs can establish that the County and School Board are constitutionally forbidden from using total population to redraw its districting lines, Plaintiffs' claim fails as a matter of law.

      **C.**    The County's and School Board's use of total population, including the prison population, to reapportion is in accordance with all constitutional principles.

Defendants have been unable to locate any decision in which a court has determined that a political body violated the "one-person, one-vote" requirements of the Equal Protection clause when using total population and the population deviation was less than 10% safe harbor.[1] In *Chen,* plaintiffs challenged the City's use of pure population as an apportionment base, arguing

---

[1] Defendants recognize that at least two Circuit Courts of Appeal have held that a political entity is not *required* to use total population to redraw its districting lines. *See Fletcher v. Lamone*, 832 F.Supp.2d 887 (USDC, District of Maryland, 2011) (affirming Maryland state law which required that prisoners be counted from their last address rather than location of prison); *Burns v. Richardson*, 384 U.S. 73 (1966) (affirming use of registered voters as population base rather than total population due to unique circumstances of Hawaii). However, while courts have permitted deviations from pure population for purposes of redistricting, no court has mandated such a result. To the contrary, courts have unanimously held that the decision of whether to use total population or some other constitutionally permissible basis is a question best left to the political process. *Id.* at 92. Delving into the political process exposes one to the possibility of diluting minority votes by the use of alternative measures, such as registered voters.

that the City knew that there were large pockets of alien residents in certain areas of the City, in concentrations as high as 45%, and therefore, voters in districts that contained these large pockets had more political influence than voters residing outside of these districts. *Id.*

In *Chen,* the plaintiffs alleged that the City's redistricting plan violated the provisions of one person, one vote even though the plan's maximum population deviation was within the permitted 10% deviation, approximately 8.63%, when using total population base. *Id.* Plaintiffs sought to overcome the City's showing of constitutional compliance, as established by a population deviation under 10%, by arbitrarily removing a segment of the population, there non-voting resident aliens, and recalculating the population deviation based on the new numbers. *Id.* Predictably, removing a large segment of the population of one district resulted in a population deviation greater than 10%, and therefore, according to plaintiffs, the City's plan violated the Constitution.[2]

The Fifth Circuit, rejected Plaintiffs' arguments and affirmed the lower court's grant of summary judgment to the City based on the City's use of total population. *Chen v. City of Houston*, 206 F.3d 502, 525 (5th Cir. 2000). The Court recognized that while the City was constitutionally permitted to use voter population, and thereby remove the large segments of non-voting population from the population base, no constitutional requirement to do so existed, even when the non-voting segment made up 45% of the total population.

The Ninth Circuit reached a similar result when faced with a nearly identical challenge to a district court's use of total population rather than voter population. *Garza v. County of Los Angeles*, 918 F.2d 763, 774 (9th Cir. 1990). In *Garza*, after determining that the county's prior

---

[2] The opinion in *Chen* did not indicate what the population deviation of the districts were when the non-voting aliens were removed, however, based on the fact that the non-voting alien population made up more than 45% of the overall population in the Hispanic districts it likely exceeded the 43% deviation that Plaintiffs' allege exists here.

redistricting plan violated the Voting Rights Act, the district court set forth a reapportionment plan that used total population, as directed by California law. The county challenged the district court's plan contending that use of total population violated the Equal Protection plan due to the high number of nonvoting, noncitizen Hispanics concentrated in particular areas of the county. The defendant county argued that use of total population in this scenario violated the equal protection plan as individual votes in the high Hispanic concentration areas weighed more heavily than votes of citizens in other districts.[3]

Like the Fifth Circuit in *Chen*, the Ninth Circuit rejected the county's argument, holding that use of total population was a constitutionally permissible mechanism to reapportion an entities representative districts.  The issue of whether to use total population or some other population base to redistrict is to be determined by the legislative process, as directed by the Supreme Court in *Burns*.  As such, the Ninth Circuit looked to California law to determine whether total population or some other voting base was to be used by the district court, and citing California Elections Code § 35000, found that California required total population.

Finally, as recently as November 5, 2014, a three judge panel in the Western District of Texas, Austin Division, affirmed the use of total population as a valid basis to determine districting lines. *Evenwel v. Perry*, A-14-CV-335-LY-CH-MHS, Doc. 35 (W.D. Texas 2015).[4] Such a result is consistent with Supreme Court as well as all circuit court precedent that has decided the issue. As explained in *Evenwel:*

> Equal Protection Clause jurisprudence has '*carefully left open* the question what population' base was to be used in achieving substantial equality of population. *Burns v. Richardson*, 384 U.S. 73, 91 (1966). The court then stated that a state's

---

[3] The district court's plan had a maximum deviation of less than one percent when total population was used. When measured using the metric the county argued was required due to the high concentrations of non-voting individuals the maximum deviation ballooned to well over the permissible 10%, settling at approximately 39.1%.
[4] The Supreme Court has accepted jurisdiction of the *Evenwel* decision.

choice of apportionment base is not restrained beyond the requirement that it not involve an unconstitutional inclusion or exclusion of a protected group. *Id.* at 92 ("unless a choice is one the Constitution forbids, the resulting apportionment base offends no constitutional bar, and compliance with the rule established in *Reynolds v. Sims*, is measured thereby.") The Court explained that this amount of flexibility is left to state legislatures because the decision whether to exclude or include individuals who are ineligible to vote from an apportionment base "involves choices about the nature of representation with which we have been shown no constitutionally founded reason to interfere." **In other words, it is not the role of the federal courts to impose a "better" apportionment method on a state legislature if that state's chosen method does not itself violate the Constitution.**

*Evenwel*, at 6-7. (Emphasis added)

Here, Plaintiffs believe they have a better apportionment method, i.e. removal of the prison population from the population data of Jefferson County, and now seek a judicial decree mandating their method over the constitutionally acceptable method chosen by the County and School Board, use of total population.  The Florida Constitution and Florida Legislature disagree with Plaintiffs' position. Article VIII, Section 1(c), Florida Constitution states:

> Except when otherwise provided by county charter, the governing body of each county shall be a board of county commissioners composed of five or seven members serving staggered terms of four years. *After each decennial census the board of county commissioners shall divide the county into districts of contiguous territory <u>as nearly equal in population as practicable.</u>* One commissioner residing in each district shall be elected as provided by law.

Interpreting the above state constitutional mandate, the Florida Legislature similarly made the political determination that Florida counties shall use total population numbers when redistricting:

> (1) There shall be five county commissioners' districts in each county, which shall be numbered one to five, inclusive, and **shall be as nearly equal in proportion to population as possible**.
>
> (2) There shall be one county commissioner for each of such county commissioners' districts, who shall be elected by the qualified electors of the county, as provided by s. 1(e), Art. VIII of the State Constitution.
>
> (3) The board of county commissioners shall from time to time, **fix the boundaries of the above districts so as to keep them as nearly equal in**

11

>  **proportion to population as possible**; provided, that changes made in the boundaries of county commissioner districts pursuant to this section shall be made only in odd-numbered years.
>
>  (4) County commissioners' districts now existing shall remain as now constituted until changed by the board of county commissioners, as provided by the constitution and in this chapter.
>
>  (5) This section shall not apply to Dade County.

Fla. Stat. 124.01.

Plaintiffs seek to compel the county to remove the prison population from its reapportionment base, or put another way, to reapportion in a manner using something other than total population. Plaintiffs' request requires this Court to step into the political arena and overrule the decision made by the Florida Legislature, and mandated by the Florida Constitution, requiring total population be used as the apportionment base for redistricting purposes. *See* Op. Att'y Gen. Fla. 01-55 (2001); Op. Att'y Gen. Fla. 01-56 (2001). The political process in Florida has determined public entities shall redraw districting lines in accordance with total population. Plaintiffs now seek to accomplish through the courts, that which could not be accomplished through the proper legislative means. *See* Senate Bill S1386, (January 26, 2010) which failed at the Reapportionment Committee level on April 30, 2010 (Seeking to require that prisoners be counted where they resided immediately prior to incarceration rather than the location of their confinement.)

Here, Plaintiffs' argument is fundamentally identical to that advanced and rejected in *Chen* and *Garcia*. Plaintiffs' argue that the County's and School Board's redistricting plans violate the provisions of the "one person, one vote" requirement, even though the plan is within the permissible 10% safe harbor deviation set forth by the Supreme Court when using total population numbers. As in *Chen* and *Garcia*, Plaintiffs' claim requires a determination by the court that a political body is constitutionally foreclosed from using total population when there is

a large concentration of nonvoting members in a single area. Plaintiffs' position is without any legal authority.

Here, when the population deviation is calculated without the prison population, the County and School Board do not dispute that the plan exceeds the 10% safe harbor deviation. Despite this fact, just as the court in *Chen* determined that summary judgment was appropriate, in a well reasoned and researched opinion, this Court should find the same, as the choice of whether to use total population figures or some variant thereof when redrawing political districts is a choice left to the political process.

As recognized by the Supreme Court: "neither in *Reynolds v. Sims* nor in any other decision has this court suggested that the States are required to include aliens, transients, short term or temporary residents, or persons denied the vote for conviction of crime in the apportionment base by which their legislators are distributed and against which compliance with the Equal Protection Clause is to be measured. The decision to **include or exclude** any such group involves choices about the nature of representation with which we have been shown no constitutionally founded reason to interfere." *Burns*, 384 U.S. at 1296-97.

### III.    Conclusion

The County's and School Board's plan is based on the total population data reported in the Census Bureau's 2010 census data. When apportioning the five districts, the Plan stayed within a ten percent safe harbor population deviation. Plaintiffs' acknowledge that the largest deviation between the districts is 8.67%, and therefore within the parameters set by the Supreme Court.

WHEREFORE, the Defendants request that the Court grant this Motion for Summary Judgment because there is no disputed issue of material fact that proves that the Defendants' redistricting plan is unconstitutional.

Respectfully submitted,

| | |
|---|---|
| */s/ Gerald B. Curington* | */s/ Zackery S. Scharlepp* |
| GERALD B. CURINGTON | LINDA BOND EDWARDS |
| Florida Bar No. 224170 | Florida Bar No. 0057282 |
| AUSLEY McMULLEN, P.A. | ZACKERY A. SCHARLEPP |
| P.O. Box 391 (32302) | Florida Bar No. 0085374 |
| 123 S. Calhoun Street | RUMBERGER, KIRK & CALDWELL |
| Tallahassee, FL 32301 | A Professional Association |
| Telephone: (850) 425-5342 | 215 South Monroe Street, Suite 702 |
| Telecopier: (850) 222-7560 | Post Office Box 10507 |
| Email: jcurington@ausley.com | Tallahassee, Florida 32302-2507 |
| Attorneys for Defendant Jefferson County School Board | Telephone: (850) 222-6550 |
| | Telecopier: (850) 222-8783 |
| | E-mail: ledwards@rumberger.com |
| | zscharlepp@rumberger.com |
| | Attorneys for Defendants Jefferson County Board of Commissioners and Marty Bishop |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 29, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: **Nancy G. Abudu at nabudu@aclufl.org; Shalini Goel Agarwal at sagarwal@aclufl.org; Randall C. Berg, Jr. at rberg@FloridaJusticeInstitute.org; and Dante P. Trevisani at dtrevisani@FloridaJusticeInstitute.org.**

*/s/ Zackery S. Scharlepp*
LINDA BOND EDWARDS
Florida Bar No. 0057282
ZACKERY A. SCHARLEPP
Florida Bar No. 0085374
RUMBERGER, KIRK & CALDWELL
A Professional Association
Post Office Box 10507
Tallahassee, Florida 32302-2507
Telephone: (850) 222-6550
Telecopier: (850) 222-8783
E-mail: ledwards@rumberger.com
   zscharlepp@rumberger.com
Attorneys for Defendants Jefferson County Board of Commissioners and Marty Bishop