UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KATE CALVIN, JOHN NELSON,
CHARLES J. PARRISH, LONNIE GRIFFIN
and CONCERNED UNITED PEOPLE,

      Plaintiffs,

vs.                        CASE NO.:  4:15-CV-00131-MW-CAS

JEFFERSON COUNTY BOARD OF
COMMISSIONERS, JEFFERSON COUNTY
SCHOOL BOARD and MARTY BISHOP,
SUPERVISOR OF ELECTIONS, in his official
capacity,

      Defendants.
_____/

**DEFENDANTS', JEFFERSON COUNTY BOARD OF COUNTY COMMISSIONERS, MARTY BISHOP, SUPERVISOR OF ELECTIONS, IN HIS OFFICIAL CAPACITY, AND JEFFERSON COUNTY SCHOOL BOARD'S
<u>RESPONSE TO PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT</u>**

      Pursuant to Rule 56, Federal Rules of Civil Procedure, and N.D. Fla. Loc. R. 7.1(A), Defendants JEFFERSON COUNTY BOARD OF COUNTY COMMISSIONERS, JEFFERSON COUNTY SCHOOL BOARD, AND MARTY BISHOP, in his official capacity as Supervisor of Elections for Jefferson County Florida, file the following response in opposition to Plaintiffs' Cross Motion for Summary Judgment:

**I.**      <u>**INTRODUCTION**</u> [1]

      The determination of this case rests on the answer to a single legal question: "Does a governmental entity violate the equal protection clause by reapportioning its districts using total

---

[1] Defendants respond in kind to each of Plaintiffs' headings and arguments. In an effort to alleviate confusion, Defendants respond to Plaintiffs' headings and arguments in the order they appear in Plaintiffs' memorandum of law.

1

population when the resulting reapportionment scheme has a maximum population deviation less than ten (10) percent." Thus far courts have answered the above question with a resounding "no". Plaintiffs' can point to no case in which any court has declared an apportionment plan unconstitutional based on a violation of the "one person one vote" principle, where the plan at issue used total population and had a maximum population deviation of less than ten percent. Plaintiffs' motion for summary judgment requests this court to make such a determination for the first time in the history of our nation based on a policy argument that prisoners are not "true residents."[2]

All courts that have addressed the issue have unanimously held that adherence to total population is constitutionally permissible.[3] *See e.g., Burns v. Richardson*, 384 U.S. 73 (1966); *Garza v. Cnty. of Los Angeles*, 918 F.2d 763 (1990); *Daly v. Hunt*, 93 F.3d 1212 (4th Cir. 1996); *Chen v. City of Houston*, 206 F.3d 502 (5th Cir. 2000). Plaintiffs' can offer no legal authority to support their argument that Defendants are required to exclude the prison population from the U.S. Census bureau's population data when reapportioning. Plaintiffs' argument rests solely on

---

[2] Plaintiffs allege that "Defendants misrepresent Plaintiffs' claim as asking the Court to step into the role of legislator by determining which political decisions should impact the drawing of district lines for the County." Defendants have misrepresented nothing. Plaintiffs' argument requires this court to make a policy determination as to political equality of a certain segment of the population, a determination that Courts have explicitly refused to make. *Chen*, 206 at 528 (history cautions that the adoption of a particular theory of political equality is a political determination in which judicial intrusion is improper.)

[3] Plaintiffs' misrepresent Defendants' argument that the Constitution requires adherence to total population. (Doc. 30, pg. 14). Defendants recognize that the decision of whether to use total population, or some other metric, is left to the decision of the political entity, and that such decisions involve policy considerations that courts have purposefully avoided. However, while the Constitution of the United States permits the use of population metrics other than total population to reapportion districts, the State of Florida, of which Jefferson County is a political subdivision, and bound to follow the laws of, has made the policy decision that political subdivisions of the state shall use total population when reapportioning district lines. Art. VIII, § 1(c), Fla. Const; *see also,* § 124.01, Fla. Stat. Therefore, while the Constitution may permit a deviation from total population, Florida law does not.

the premise that prisoners housed at Jefferson Correctional Institute (JCI) are not "true residents" of Jefferson County, citing to a myriad of irrelevant facts relating to the level of participation the inmates have in the community. Plaintiffs' apparently rely on the "facts" related to the participation and community involvement, or lack thereof, of inmates to support their argument that including the prison population does not further "representational equality" as set forth by Judge Kozinski's dissent in *Garza. Garza*, 918 F.2d at 778. However, there is no constitutional requirement that reapportionment be done in a manner to further either "voter equality" or "representational equality," the only requirement, as set forth by the Supreme Court, is that entities reapportion population in nearly as equal a manner as possible. In the case of local entities the Supreme Court presumptively accepts that an entity has met this requirement so long as the maximum population deviation does not exceed ten percent. Here, there is no dispute that the Defendants' 2013 Redistricting Plans each had a maximum population deviation of less than ten percent, and therefore, the Defendants' Plans each meet all constitutional requirements.

**II.     STATEMENT OF MATERIAL FACTS**

Defendants rely on their statement of facts filed with their previously filed motion for summary judgment. Defendant does note that in pointing out seven Florida counties that have chosen not to count prisoners, Plaintiffs ignore the fact that these decisions were made via legislative action, the proper forum for making policy determinations, and not judicial decree. In addition, Plaintiff ignores the other 56 counties that have apparently chosen to count prisoners within the total population for purposes of redistricting.  Moreover, the mere fact that these counties made the decision not to count the prisoners does not make the Defendants' choice unconstitutional.

**III.     STANDARD OF REVIEW**

Defendants rely on their standard of review filed with their previously filed motion for summary judgment. Here, based on the arguments and issues advanced by either party, and the lack of any genuine issue of material fact, Defendants maintain that this is a matter that is properly decided by the Court on the parties respective summary judgment submissions.

**IV.     ARGUMENT**

The danger of adopting Plaintiffs' argument is apparent by their own admission that "Plaintiffs do not argue that the counting of prisoners for redistricting purposes is *per se* impermissible." Instead, Plaintiffs assert that they only contend that prisoners must be removed from total populations in situations where the prison population makes up a certain percentage of the overall population.[4] Plaintiffs' argument is internally inconsistent. Plaintiffs argue that prisoners must be excluded because they do not play a meaningful role in the community, and when the prison population is removed from the Defendants' redistricting plan, the plan exceeds the ten percent safe harbor provision, and is therefore unconstitutional. However, Plaintiffs' policy arguments as to why prisoners should be excluded from the total population are equally applicable to large jurisdictions, yet Plaintiffs' admit that the Constitution does not forbid including the prison population in these areas.

---

[4] Plaintiffs' proposed action of removing prisoners from population counts in only small rural counties such as Jefferson, while leaving the prisoners in the population totals of larger, urban districts, such as Miami-Dade, implicates the equal protection rights of the inmates housed in rural populations. No reasonable justification exists for treating prisoners in Jefferson County any differently than prisoners in Miami-Dade. However, Plaintiffs have painted themselves into a corner and cannot argue that all prisoners must be excluded, as such an argument is clearly a policy argument, and would defeat the "representational equality" rationale concocted here in an attempt to persuade this Court to make the policy determination that prisoners in small rural counties cannot be counted.

According to Plaintiffs, when the prison population makes up a large percentage of the overall population, "the Constitution does require Defendants to present a 'legally acceptable justification' for their actions." (Doc 30 pg. 8, *citing, Kirkpatrick v. Preisler*, 394 U.S. 526, 532 (1969). Plaintiffs' reliance on *Kirkpatrick* to establish that the Defendants are required to "present a legally acceptable justification" for the current plan is blatantly false. First, *Kirkpatrick*, dealt with federal congressional redistricting, which the Supreme Court has determined requires nearly absolute population equality, and any deviation from absolute equality must be justified. *Karcher v. Daggett*, 462 U.S. 725, 730 (1983). Second, absolute equality is not the standard for state and local redistricting, and below a threshold of ten percent deviation from absolute equality, an entity's redistricting plan complies with the one person, one vote requirements of the equal protection clause, and no justification for a deviation under this amount is needed. *Brown v. Thomson*, 462 U.S. 835, 108 (1983); *Mahan v. Howell*, 410 U.S. 315 (1973); *Connor v. Finch*, 431 U.S. 407, 412 (1977) (setting threshold at ten percent).

Here, there is no dispute that the Defendants' plan as drawn has a maximum deviation of less than ten percent, therefore, there is no requirement for the Defendants to set forth any justification for its decision to use total population, and Plaintiffs' have failed to set forth a *prima facie* case of an equal protection violation and therefore their claim must fail. *See Gaffney v. Cummings*, 412 U.S. 735, 744 (1973).

    **A.**    **Plaintiffs' attempt to "meaningfully distinguish" the true Jefferson County residents from the JCI inmate population requires this Court to make a policy determination as to the value of a particular class of citizens.**

Plaintiffs' argument that the prisoners should be excluded from the total population for purposes of redistricting are arguments that are more appropriately made to legislative bodies, rather than a court of law. While Plaintiffs are correct that the Constitution permits states to

count prisoners where they resided prior to being incarcerated for redistricting purposes, the State of Florida has made the policy determination through the legislative process that total population shall be the base upon which redistricting lines are drawn. Art. VIII, § 1(c), Fla. Const; *see also,* § 124.01, Fla. Stat. Whether good or bad public policy, the decision to use total population or some other metric is a policy determination that the legislature is free to make. These decisions are best left in the hands of the legislature, decisions that may change over time based on the views of the people, rather than to issue an inflexible legal determination by the judiciary when one is not needed.

    Cities, counties, and other legislative bodies, do not make value judgments as to whether a particular group of people, be it minors, aliens, non-voters, or prisoners, are worthy of being included within the total population numbers of an entities redistricting scheme. The entities simply follow the methodology employed by the United States Census Bureau to determine each decennial census.

    Having previously failed in the political arena at both the state and then local level, Plaintiffs now make their policy arguments as to why they believe it would be a better practice not to include prisoners within the total population figures of a district. Plaintiffs' attempts to disguise their policy arguments as a constitutional mandate requiring exclusion of prisoners has no legal support. Plaintiffs do not cite to a single case, as none exists, in which a court has determined that prisoners cannot be counted as part of the total population for redistricting purposes, due to their purported lack of involvement in the surrounding community. Plaintiffs' focus on prisoners' lack of involvement in the community as reasons they believe prisoners should not be included, but overlook countervailing arguments to the contrary.

By citing Garza, Plaintiffs implicitly acknowledge that noncitizens play an integral role in society yet Plaintiffs have the temerity to dehumanize prisoners by arguing that prisoners "by contrast" do not have an integral role in society because they effectively have "no access" to local government. Defendants contend that this argument is simply wrong factually and legally. Not only do prisoners remain "people" or "persons", they have a fundamental interest in the management and politics of Jefferson county, such as:

1. Access to local government by petitioning their county commissioners and school board members for redress.

2. They are significantly affected by their local representatives' decisions. Local representatives vote on budgets that impact the quality of education in the public schools in Jefferson County. The quality of schools directly impacts the quality of the local workforce (labor pool) and thus the quality of correctional officers selected from that pool.

3. Those correctional officers gravely affect prisoners' daily lives (and the prisoners' families) in far greater ways than local police affect the lives of Jefferson County citizens on the streets. Free citizens can largely avoid local police on a day to day basis whereas prisoners cannot avoid correctional officers but are instead forced to interact and communicate with each on a daily basis.

4. Budgets also affect public services such as fire protection which likewise affects the wellbeing and safety of prisoners (and their families when visiting). The prison, and as a result inmates, receive public services such as garbage collection, utilities, water & sewer, and fire.

Plaintiffs argue that "true" residents are impacted by government decisions and, therefore, should be able to petition their representatives about issues that affect their lives with the same level of influence as eligible voters. It can be equally argued that prisoners are impacted by local government decisions as much as, if not more than, "actual" residents (as that term is used by plaintiffs) are impacted. Consistent therewith, prisoners should be able to petition their representatives about issues that affect their lives just as plaintiffs argue "true" residents should be able to petition their representatives. Plaintiffs would effectively strip all access to local

government from prisoners by arbitrarily removing them from the total population, and therefore denying them representation. Defendants have not ludicrously argued that prisoners enjoy the same level of freedom as students and non-citizens, as plaintiffs suggest or impute without predicate. However, it is ironic, at best, that plaintiffs would argue that free non-citizens have greater roles and rights than citizen prisoners and relegate prisoners who are citizens to lesser roles or rights than non-citizens.

Plaintiffs argue that prisoners "cannot be considered genuine members of the community". For the reasons stated above, Defendants argue that prisoners can and should be considered genuine members of the community. Prisoners and their families have a great interest in the management of Jefferson County. While Defendants argue that Plaintiffs' arguments should not prevail in this forum, Defendants do not suggest that Plaintiffs' arguments are ludicrous or without credence or merit. Rather, regardless of which side this Court believes sets forth the better rationale or argument as to whether or not prisoners should be included in the total population for redistricting purposes, the Court should not engage in the judicial activism as invited by Plaintiffs, and better left to the legislature. *Burns v. Richardson*, 384 U.S. 73, 91 (1966).

Opening the door of the courthouse to determine "true" residents in this context, creates the very real implication that federal courts, and not legislative bodies, are now the proper forum in which to determine what population metric is proper for redistricting purposes. While Plaintiffs purposefully limit their argument to excluding prisoners, should the Court enter the arena of determining which individuals are worthy of being included in an entity's population data, it should not be unexpected that arguments to exclude other segments of the population will shortly follow. Policy arguments exist to exclude resident aliens and minors, or to give more

weight to areas that have a high concentration of eligible voters, such as areas with high concentrations of the elderly as opposed to younger families with children. This Court should not wade into these political judgments. With the data available today, rather than using eligible voters as a population base, a valid argument exists to redraw district lines based on the actual voting history and percentage of the district's population. An individual's vote, who lives in an area with a high concentration of citizens who exercise their right to vote, is worth less than an individual who lives in a district with lower voter turnout, and therefore the argument naturally flows that only those who exercise their right to vote should be included for redistricting purposes.

### B. The 2013 Redistricting Plan is within the ten percent safe harbor of required population equality, and therefore presumptively valid.

Plaintiffs admit that when using total population as the basis for the County's redistricting lines, the County's plan is within the maximum deviation permitted by the Supreme Court. Therefore, unless Plaintiffs can set forth a legal requirement that the County is required to exclude the prison population when redrawing district lines, which they cannot as addressed above in section A, Plaintiffs have failed to establish a *prima facie* violation of the Equal Protection Clause, and therefore the Defendants are entitled to summary judgment in their favor.[5]

---

[5] Plaintiffs allege that the Attorney General opinions relied upon by the County are legally flawed and incorrect. [Doc. 30, pg. 13]. Plaintiffs apparently misconstrue the Attorney General's opinion. Plaintiffs allege that the Attorney General's opinion was "legally flawed for the reasons set forth in this brief, namely that the Supreme Court and other legal precedent clearly establish that the County was not required to include the prison population." While Plaintiffs are correct that the Constitution does not require the inclusion of the prison population, the Attorney General opinion did not base its conclusion on a misapplied constitutional mandate. Rather, the Attorney General correctly noted that the State of Florida, as evidenced in the State Constitution and Statutes, has legislatively made the policy decision that all reapportionment must be done based on total population, and therefore the prison population must be included. *See* Op. Att'y Gen. Fla. 01-55 (2001), Op. Att'y Gen. Fla. 01-56 (2001).

Plaintiffs' assertion that the Supreme Court has held "in some circumstances jurisdictions must adjust raw census data in order to meet the constitutional requirement of making a "good-faith effort to achieve absolute equality," misapplies the court's ruling in *Mahan v. Howell*, 410 U.S. 315, 325 (1973). In *Mahan,* after noting that 18,000 Navy personnel were incorrectly included within one census block, the Court held that the District Court did not error by implementing a multi-member district in order to correct the prior mal-apportionment. However, the case cannot be cited for the proposition that a district court is permitted to require a county to remove a segment of the population from the census data prior to redrawing district lines. Further, after careful review of the *Mahan* decision Defendants are unable to locate any language that supports Plaintiffs assertion that "[t]he Supreme Court expressly recognized there may be instances when reliance on census figures is not only misplaced, but unconstitutional for achieving population equality." (Doc. 30 pg. 18). The rulings in *Garza*, *Chen*, and *Daly,* further counsel against Plaintiffs' assertion as each court upheld the use of total population despite claims of deviation as high as 39.1% when the proposed "unworthy" population was excluded.

  C.  **The Defendants' plan is within the ten percent safe harbor deviation, and therefore Defendants are under no obligation to provide a justification for its use of total population as a reapportionment scheme.**

As recognized in *Chen:*

The Equal Protection Clause requires that representatives to an elected body be drawn from voting districts of substantially equal population. *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). This guarantee extends to local elections. *See Avery v. Midland County,* 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968). However, because state and local elections are not subject to the explicit commands of the Constitution regarding federal elections, they are not held to a standard of absolute population equity. *See Brown v. Thomson,* 462 U.S. 835, 103 S.Ct. 2690, 2695-96, 77 L.Ed.2d 214 (1983) (state must make only a good faith effort to ensure population equity and may balance population against other legitimate concerns). If the maximum variation between districts exceeds a certain threshold, the state will be required to justify the variance by invoking such concerns. *Mahan v. Howell,* 410 U.S. 315, 93 S.Ct.

> 979, 35 L.Ed.2d 320 (1973) (16.4% variation justified by constraints of political subdivision lines). **However, below a certain threshold the plaintiff has failed to establish a *prima facie* case and the districting body will not be required to justify minor variations.** *See Gaffney v. Cummings,* 412 U.S. 735, 93 S.Ct. 2321, 2330, 37 L.Ed.2d 298 (1973). The Court has indicated that this threshold is **ten percent**. *See, e.g., Connor v. Finch,* 431 U.S. 407, 97 S.Ct. 1828, 1833, 52 L.Ed.2d 465 (1977) (setting threshold at ten percent).

206 F.3d at 525 (emphasis added).

Here, the Defendants' plan is within the ten percent safe harbor provision, and therefore the Defendants are not required to justify the variations. Defendants do not dispute that <u>if</u> the Constitution requires the exclusion of prisoners from the overall total population[6] then the 2013 Redistricting Plan as currently drawn is outside of the safe harbor provision and therefore a likely violation of the equal protection clause. However, Plaintiffs cannot establish any legal requirement that inmates at JCI be excluded from the population when redistricting. As the inmates inclusion in the population numbers is constitutionally permissible and the maximum population deviation when including the inmates is under ten percent, Defendants redistricting plans comply with all constitutional requirements.

## V.     CONCLUSION

The "one-person, one-vote" standard has allowed local legislatures to choose their apportionment basis and divide their districts among total population for the past fifty years. In 2013, following United States Supreme Court precedent, and binding Florida law, the Defendants reapportioned their districts using total population. Plaintiffs' claims of Constitutional violations related to the 2013 redistricting scheme are subject to summary judgment as Plaintiffs cannot cite to any law or case which establishes that use of total population is constitutionally forbidden in any circumstance, including the circumstance present

---

[6] Defendants do dispute that prisoner exclusion is constitutionally required as addressed above.

here. While Plaintiffs advance what may be valid policy arguments for the exclusion of inmates from the Defendants redistricting scheme, as cautioned repeatedly by the courts, such arguments are improper in a judicial forum. Having failed to present a legal violation, Plaintiffs claims are legally insufficient and Defendants are entitled to judgment as a matter of law.

Respectfully submitted,

| /s/ *Gerald B. Curington* | /s/ *Zackery A. Scharlepp* |
|---|---|
| GERALD B. CURINGTON | LINDA BOND EDWARDS |
| Florida Bar No. 224170 | Florida Bar No. 0057282 |
| AUSLEY McMULLEN, P.A. | ZACKERY A. SCHARLEPP |
| P.O. Box 391 (32302) | Florida Bar No. 0085374 |
| 123 S. Calhoun Street | RUMBERGER, KIRK & CALDWELL |
| Tallahassee, FL 32301 | A Professional Association |
| Telephone: (850) 425-5342 | 215 South Monroe Street, Suite 702 |
| Telecopier: (850) 222-7560 | Post Office Box 10507 |
| Email: jcurington@ausley.com | Tallahassee, Florida 32302-2507 |
| Attorneys for Defendant Jefferson County School Board | Telephone: (850) 222-6550 |
| | Telecopier: (850) 222-8783 |
| | E-mail: ledwards@rumberger.com |
| | zscharlepp@rumberger.com |
| | Attorneys for Defendants Jefferson County Board of Commissioners and Marty Bishop |

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on November 5, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: **Nancy G. Abudu at nabudu@aclufl.org; Shalini Goel Agarwal at sagarwal@aclufl.org; Randall C. Berg, Jr. at rberg@FloridaJusticeInstitute.org; and Dante P. Trevisani at dtrevisani@FloridaJusticeInstitute.org.**

    / s / Zackery A. Scharlepp
LINDA BOND EDWARDS
Florida Bar No. 0057282
ZACKERY A. SCHARLEPP
Florida Bar No. 0085374
RUMBERGER, KIRK & CALDWELL
A Professional Association
Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:  ledwards@rumberger.com
        zscharlepp@rumberger.com
Attorneys for Defendants Jefferson County Board of Commissioners and Marty Bishop