UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KATE CALVIN, JOHN NELSON,
CHARLES J. PARRISH, LONNIE GRIFFIN
and CONCERNED UNITED PEOPLE,

      Plaintiffs,

vs.                              CASE NO.: 4:15-CV-00131-MW-CAS

JEFFERSON COUNTY BOARD OF
COMMISSIONERS, JEFFERSON COUNTY
SCHOOL BOARD and MARTY BISHOP,
SUPERVISOR OF ELECTIONS, in his official
capacity,

      Defendants.
_____/

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF
DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO
<u>PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Rule 56, Federal Rules of Civil Procedure, N.D. Fla. Loc. R. 7.1(A), and this Court's written instructions, issued on January 6, 2016 [D.E. 43], Defendants JEFFERSON COUNTY BOARD OF COUNTY COMMISSIONERS, JEFFERSON COUNTY SCHOOL BOARD, and MARTY BISHOP, in his official capacity as Supervisor of Elections for Jefferson County, Florida, file the following supplemental brief in support of Defendants' Joint Motion for Summary Judgment

1

[D.E. 24] and in opposition to Plaintiffs' Cross-Motion for Summary Judgment [D.E. 30].

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' equal protection claim, which alleges that Defendants' 2013 redistricting plan violates the principle of "one person, one vote," fails for two simple reasons. First and foremost, it fails because Plaintiffs cannot make a *prima facie* showing that the 2013 redistricting plan, which apportions representative districts based on total population, violates the "one person, one vote" standard. Second, even if one arbitrarily excludes Jefferson County's inmate population from the apportionment base (which artificially manufactures a seeming *prima facie* violation of the "one person, one vote" principle), Plaintiffs' equal protection claim still fails because Defendants had a legally acceptable justification for adopting the 2013 redistricting plan – namely, the plan serves the traditional and time-honored goal of promoting and safeguarding representational equality, which is a bedrock principle of representative government.

## II. STATEMENT OF MATERIAL FACTS BEYOND DISPUTE

As to the argument that Plaintiffs cannot make a *prima facie* showing that the 2013 redistricting plan violates the "one person, one vote" standard, Defendants rely on their statement of facts set forth in Defendants' Joint Motion for Summary Judgment [D.E. 24].

As to the point that the 2013 redistricting plan serves the traditional and time-honored goal of promoting and safeguarding representational equality, Defendants supplement the record with the following facts beyond dispute showing that a "representational nexus" exists between the inmates at Jefferson Correctional Institution ("JCI") and Defendants:

1. Elected officials on the Jefferson County Board of Commissioners (the "Jefferson County Commission") and the Jefferson County School Board (the "School Board") consider interacting with their constituents and responding to their concerns a responsibility of elected officials. [*Affidavit of Hines Boyd* ("*Boyd Aff.*") at ¶¶ 2, 4-5, 36-37; *Hines Boyd Deposition Transcript* ("*Boyd Depo.*"). at 8:22-9:9, 15:23-18:5; *Al Cooksey Deposition Transcript* ("*Cooksey Depo.*") at 8:9-9:10, 20:25-21:1, 22:12-17; *Shirley Washington Deposition Transcript* ("*Washington Depo.*") at 7:8-9:4]

2. Members of the Jefferson County Commission, the School Board's Superintendent, and employees of Jefferson County have met with correctional officials on behalf of inmates to discuss the needs of JCI and inmates and work out details for providing or assisting with the provision of various services and benefits, e.g., fire protection, trash removal and ambulance service. [*Boyd Aff.* at ¶¶ 4-5, 31; *Boyd Depo.* at 15:23-18:5; *Chris Hodgson Deposition Transcript* ("*Hodgson Depo.*") at 34:6-22, 48:17-22, 49:18-52:6, 53:18-54:7, 63:10-18, 65:17-

3

68:12; *Hodgson Depo.* Exs. 1 and 2; *Cooksey Depo.* at 18:12-22:17, 26:21-29:3; *Cooksey Depo.* Ex. 1; *Affidavit of Parrish Barwick* ("*Barwick Aff.*") at ¶ 4; *Affidavit of Mark Matthews* ("*Matthews Aff.*") at ¶¶ 2-3; *Defendant Jefferson County School Board's Response to Plaintiffs' Second Request for Admission and Third Request to Produce* ("*School Board's Responses to Plaintiffs' Second RA and RP*"), pages 1 and 3 of attached documents]

3.  The Jefferson County Commission and the School Board consider JCI inmates to be part of the Jefferson County community, treat them as individuals, and occasionally interact with them both as individuals and in the course of carrying out their official duties, for example, by awarding GEDs to prisoners and attending community partnership meetings at JCI. [*Boyd Aff.* at ¶¶ 5-6, 20, 22-23, 36-37; *Boyd Depo.* at 15:23-18:5; *Cooksey Depo.* at 20:25-22:17; *Washington Depo.* at 32:3-14; *Hodgson Depo.* at 65:17-68:14; *Hodgson Depo.* Exs. 1 and 2]

4.  Members of the Jefferson County Commission and the School Board have been invited to and have attended meetings with prison officials at JCI who act on behalf of inmates at JCI. [*Boyd Aff.* at ¶ 4; *Boyd Depo.* at 15:23-18:5; *Hodgson Depo.* at 19:7-21:13, 65:17-67:6; *Matthews Aff.* at ¶ 4; *School Board's Responses to Plaintiffs' Second RA and RP*, pages 1 and 3 of attached documents]

5.  Inmates at JCI periodically perform work outside the prison in the community and thereby earn gain time (i.e., credit towards early release from

prison).  [*Boyd Aff.* at ¶¶ 11, 20, 36; *Boyd Depo.* at 47:9-49:19; *Hodgson Depo.* at 52:7-53:17, 54:8-58:3, 62:1-10, 63:19-65:7; *School Board's Responses to Plaintiffs' Second RA and RP*, page 1 of attached documents]

6. In connection with this gain time program, Jefferson County employees, among others, directly supervise the inmates who benefit from (1) police or sheriff protection from criminal behavior that might occur to them while on the side of the road and (2) EMS services if they need medical and/or ambulance services on the side of the road.  [*Hodgson Depo.* at 36:15-19, 39:4-21, 54:8-55:5, 57:21-58:3 74:19-75:9; *Barwick Aff.* at ¶ 3; *Boyd Depo.* at 37:17-38:12, 39:22-40:7; *Griffin Depo.* at 6:22-8:19]

7. JCI relies on Jefferson County to collect its trash and garbage, which is dumped into the Jefferson County landfill.  [*Boyd Aff.* at ¶ 15; *Hodgson Depo.* at 50:23-52:6]

8. There are times when Jefferson County provides EMS ambulance and paramedic emergency services to transport JCI prisoners to Tallahassee Memorial Hospital and occasionally other medical facilities outside JCI; such ambulance services were provided approximately fifty times in 2015.  [*Matthews Aff.* at ¶¶ 2-6; *Hodgson Depo.* at 48:17-25, 80:24-81:3; *Boyd Aff.* at ¶¶ 17, 31; *Boyd Depo.* at 37:17-20]

9. Persons incarcerated at JCI may be furloughed for a specific approved reason such as a funeral or an elective medical procedure. [*Hodgson Depo.* at 24:8-21, 58:4-59:5]

10. Furloughed inmates are generally not permitted to interact with the public but may interact with family or medical staff and may be accompanied by local law enforcement officers (municipal or county). [*Hodgson Depo.* at 24:8-31:4, 69:19-70:9]

11. Inmates at JCI have expressed appreciation for the opportunity to be furloughed, which is a benefit to them. [*Hodgson Depo.* at 70:10-18]

12. In accordance with the First Amendment, inmates at JCI are not prohibited from writing letters to members of the Jefferson County Commission or the School Board, and in fact have done so. [*Hodgson Depo.* at 59:18-60:9, 77:13-23; *Washington Depo.* at 31:3-24, 35:5-18; *Washington Depo.* Composite Ex. 3; *Boyd Aff.* at ¶¶ 22-23; *Boyd Depo.* at 21:5-25]

13. Various churches and other non-profit organizations operate within JCI to provide services to inmates. [*Hodgson Depo.* at 60:19-61:17]

14. There are four fire stations located in Jefferson County that are available to provide fire suppression services to JCI in the event of a fire. [*Matthews Aff.* at ¶¶ 4-5]

15. Inmates at JCI benefit from the EMS ambulance and paramedic emergency services provided by Jefferson County. [*Boyd Depo.* at 37:12-38:12; *John Nelson Deposition Transcript* ("*Nelson Depo.*") at 18:16-20:1; *Lonnie Griffin Deposition Transcript* ("*Griffin Depo.*") at 13:24-14:13]

16. Inmates at JCI benefit from the existence of fire stations within Jefferson County and the provision of fire suppression services by Jefferson County. [*Boyd Depo.* at 37:17-38:12; *Nelson Depo.* at 20:2-9; *Griffin Depo.* at 15:19-21]

17. Inmates at JCI benefit from the provision of law enforcement services by Jefferson County. [*Boyd Depo.* at 37:17-38:12; *Griffin Depo.* at 6:22-8:19]

18. Inmates at JCI benefit from earning gain time by working in the JCI/Jefferson County work program. [*Hodgson Depo.* at 56:13-25, 63:19-64:20; *Griffin Depo.* at 6:9-20]

## III. STANDARD OF REVIEW

Defendants have set forth the applicable standard of review in Defendants' Joint Motion for Summary Judgment [D.E. 24, pp. 5-6].

## IV. ARGUMENT

### A. Plaintiffs Cannot Make A *Prima Facie* Showing That The 2013 Redistricting Plan Violates The "One Person, One Vote" Principle

Defendants emphasize, first and foremost, that Plaintiffs' equal protection claim fails because they cannot make a *prima facie* showing that Defendants' 2013

redistricting plan violates the "one person, one vote" standard. Indeed, the facts are undisputed that the 2013 redistricting plan has a maximum population deviation of 8.67%, which is well within the 10% parameter established by the United States Supreme Court to test the validity of a redistricting plan under the Equal Protection Clause. Plaintiffs' equal protection claim thus fails as a matter of law, as explained in Defendants' Joint Motion for Summary Judgment [D.E. 24], the arguments of which are reiterated here and incorporated by reference herein.

**B.     Defendants Had A Legally Acceptable Justification For Adopting The 2013 Redistricting Plan**

Even if one entertains Plaintiffs' arbitrary exclusion of Jefferson County's inmate population from the apportionment base (which artificially manufactures a seeming *prima facie* violation of the "one person, one vote" principle), Plaintiff's equal protection claim still fails because Defendants had a legally acceptable justification for adopting the 2013 redistricting plan – namely, the plan serves the goal of promoting representational equality, which is a fundamental principle of representative government.

The legal principles applicable here are well summarized by the Ninth Circuit Court of Appeals in *Garza v. County of Los Angeles*:

> "[T]he fundamental principle of representative government is one of equal representation for equal numbers of people, without regard to race, sex, economic status, or place of residence within a state." [*Wesberry v. Sanders*, 376 U.S. 1 (1964)] This standard derives from

8

> the constitutional requirement that members of the House of Representatives are elected "by the people," *Reynolds v. Sims*, 377 U.S. [533,] 560 [(1964)], from districts "founded on the aggregate number of inhabitants of each state" (James Madison, The Federalist, No. 54 at 369 (J. Cooke ed. 1961)); U.S. Const. art. I, § 2. The framers were aware that this apportionment and representation base would include categories of persons who were ineligible to vote − women, children, bound servants, convicts, the insane, and, at a later time, aliens. *Fair v. Klutznick*, 486 F. Supp. 564, 576 (D.D.C. 1980). Nevertheless, they declared that government should represent *all* the people.
>
> ***
>
> The purpose of redistricting is not only to protect the voting power of citizens; a coequal goal is to ensure "equal representation for equal numbers of people." *Kirkpatrick* [*v. Preisler*], 394 U.S. [526], 531 [(1969)]. Interference with access to elected representatives impermissibly burdens their right to petition the government. *Eastern Railroad President's Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 [(1961)]. Since "the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives", this right to petition is an important corollary to the right to be represented. *Id.* Non-citizens are entitled to various federal and local benefits, such as emergency medical care and pregnancy-related care provided by Los Angeles County. . . . As such, they have a right to petition their government for services and to influence how their tax dollars are spent.

*Garza v. County of Los Angeles*, 918 F.2d 763, 774-775 (9th Cir. 1990). Based on these principles, the *Garza* Court concluded that basing districts on voting population rather than total population would disproportionately affect the rights of people living in a district with a high population of noncitizen Hispanics by

9

diluting the access of people within that district to their representative (since that district would be more populous than districts with a higher percentage of voting populations). *Id.* In essence, the *Garza* Court expressly recognized that it is a "coequal goal" of redistricting "to ensure equal representation for equal numbers of people." 918 F.2d at 775.

The same reasoning applies in this case. Here, had Defendants adopted a redistricting plan that excluded non-voting inmates, that action would have diluted the access of people (inmates as well as voting citizens) within District 3 (which has a higher percentage of non-voting inmates than any other district within Jefferson County) to their District 3 representative. Instead, Defendants adopted the 2013 redistricting plan, which included Jefferson County's inmate population in the apportionment base, thus serving the goal of representational equality. Defendants would submit that this was a legally acceptable justification for adopting the 2013 redistricting plan. Just as aliens and minors have the right to petition their government for services that affect them, so too, inmates have that right. And as the undisputed facts in this case show, inmates at JCI are certainly affected by the decisions of and services provided by the Jefferson County Commission and School Board. In other words, a sufficient "representational nexus" exists between the inmates at JCI and Defendants to legally justify the

inclusion of inmates in the apportionment base used to determine the 2013 redistricting plan.

## V. CONCLUSION

For the foregoing reasons, this Court should grant Defendants' Joint Motion for Summary Judgment [D.E. 24] and deny Plaintiffs' Cross Motion for Summary Judgment [D.E. 30].

Respectfully submitted,

| /s/ *Gerald B. Curington* | /s/ *Linda Bond Edwards* |
|---|---|
| GERALD B. CURINGTON | LINDA BOND EDWARDS |
| Florida Bar No. 224170 | Florida Bar No. 0057282 |
| AUSLEY McMULLEN, P.A. | BRIAN L. HAYDEN |
| P.O. Box 391 (32302) | Florida Bar No. 058987 |
| 123 S. Calhoun Street | RUMBERGER, KIRK & CALDWELL |
| Tallahassee, FL 32301 | A Professional Association |
| Telephone: (850) 425-5342 | 215 South Monroe Street, Suite 702 |
| Telecopier: (850) 222-7560 | Post Office Box 10507 |
| Email: jcurington@ausley.com | Tallahassee, Florida 32302-2507 |
| Attorneys for Defendant Jefferson County School Board | Telephone: (850) 222-6550 |
| | Telecopier: (850) 222-8783 |
| | E-mail: ledwards@rumberger.com |
| | bhayden@rumberger.com |
| | Attorneys for Defendants Jefferson County Board of Commissioners and Marty Bishop |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 12, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:  **Nancy G. Abudu at nabudu@aclufl.org; Shalini Goel Agarwal at sagarwal@aclufl.org; Randall C. Berg, Jr. at rberg@FloridaJusticeInstitute.org; and Dante P. Trevisani at dtrevisani@FloridaJusticeInstitute.org.**

      / s / Linda Bond Edwards
LINDA BOND EDWARDS
Florida Bar No. 0057282
BRIAN L. HAYDEN
Florida Bar No. 058987
RUMBERGER, KIRK & CALDWELL
A Professional Association
Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:  ledwards@rumberger.com
       bhayden@rumberger.com
Attorneys for Defendants Jefferson County Board of Commissioners and Marty Bishop